Filed 2/6/23 P. v. Suarez CA4/2
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079619 |
| v. | (Super. Ct. No. RIF153089) |
| ARTURO SUAREZ, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. William S. Lebov, Judge. Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I.

# INTRODUCTION

Defendant and appellant Arturo Suarez Jr. appeals from a postjudgment order denying his Penal Code[1] section 1172.6 (formerly section 1170.95)[2] petition for resentencing under the procedures established by Senate Bill Nos. 775 and 1437. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so. Based on our independent review of the record for potential error and considering defendant's personal supplemental brief in support of his appeal, we affirm the trial court's denial of the petition for relief under section 1172.6.

# II.

# FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant, who was a gang member, lost a fist fight to a senior gang member. As both parted ways and went to their respective vehicles, defendant grabbed a gun from his

---

[1] All future statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We cite to section 1172.6 for ease of reference unless otherwise indicated.

[3] A summary of the factual background is taken from this court's nonpublished opinion in defendant's direct appeal, case No. E057525 (*People v. Suarez* (Apr. 10, 2014, No. E057525) [nonpub. opn.] (*Suarez I*).)

vehicle and shot at the senior gang member while he was in his car. Specifically, defendant went across the street to his car, reached through the driver's window for his pistol, walked over to the victim's car, and fired at the passenger's side door of the victim's car more than six times. Defendant was about six feet away. (*Suarez I*, *supra*, E057525.)

Defendant shot the victim 10 times in the chest, shoulders, arms and finger. After four surgeries, including putting steel plates in his arms, the victim was released from the hospital five days after the shooting. The victim's rear, passenger-side car window was shattered and the car trunk, passenger-side bumper and inside door panel on the driver's side were damaged from bullet strikes. Two .40-caliber bullets and eight shell casings were recovered. Three of the casings were found in the car. No weapons were found inside or near the victim's car. (*Suarez I*, *supra*, E057525.)

After the shooting, defendant ran to his car and left the scene. He disposed of his gun and, fearing incarceration, fled to Las Vegas. Three months after the shooting, defendant was located and arrested. Defendant admitted to grabbing his gun from his vehicle and shooting at the victim, but claimed to do so in self-defense. Specifically, he testified he saw the victim reach under his car seat and pull something out. Defendant thought the victim was going to kill him, so he ran to his car. Glancing back, defendant saw the victim holding a gun and thought the victim was going to shoot him. Defendant grabbed his gun from his car and started firing at the victim's car because the victim had a gun pointed at him. Defendant feared for his life and that of his wife and one-month-

3

old son. As the victim drove away, defendant continued firing at the victim. (*Suarez I, supra*, E057525.)

On August 22, 2012, a jury convicted defendant of attempted murder (§§ 187, subd. (a), 664, subd. (a); count 1), felon in possession of a firearm (§ 29800, subd. (a); count 2); and discharging a firearm at an occupied vehicle (§ 246; count 4). The jury also found true as to count 1 that defendant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and that the attempted murder was not willful, deliberate or premeditated. As to count 4, the jury found true the allegation that defendant personally used a firearm. Defendant admitted his prior serious felony (§ 667, subd. (a)) and strike prior allegations (§§ 1170.12, subd. (c)(1), 667, subds. (c), (e)(1)). The jury found defendant not guilty of street terrorism (§ 186.22, subd. (a); count 3). The trial court sentenced defendant to 24 years four months, plus a consecutive term of 25 years to life in prison. (*Suarez I, supra*, E057525.)

Defendant appealed, arguing the trial court violated his constitutional rights by failing to instruct sua sponte on attempted voluntary manslaughter based on sudden quarrel or heat of passion, as a lesser included offense of attempted murder. We rejected defendant's contention, and on April 10, 2014, affirmed the judgment. (See *Suarez I, supra*, E057525.)

On January 1, 2019, Senate Bill No. 1437 became effective, which amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder. (See Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 also added

4

former section 1170.95 (now section 1172.6), which created a procedure for offenders previously convicted of murder to seek retroactive relief if they could no longer be convicted of murder under the new law. (Stats. 2018, ch. 1015, § 4.) Effective January 1, 2022, Senate Bill No. 775 clarified that "persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1.) This change in the law was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437, § 1, subd. (f).)

On January 12, 2022, defendant in propria persona filed a petition for resentencing pursuant to former section 1170.95.

Defendant was appointed counsel and a hearing was held on August 12, 2022. Quoting from this court's nonpublished opinion in defendant's direct appeal, the prosecutor informed the trial court that defendant had personally used a gun and "'shot the victim 10 times in the chest, shoulders and arms, and finger.'" The prosecutor also noted that defendant testified that he had shot the victim because he thought the victim had a gun, and he fled to Las Vegas. The prosecutor further pointed out that "[t]here were no instructions given to his jury regarding aiding and abetting, natural and probable consequences, or felony murder instructions." Defendant's counsel stated that she had reviewed this court's opinion in defendant's direct appeal, as well as the jury instructions,

5

and objected to the petition being denied without having spoken to defendant. The trial court denied the petition without explanation. Defendant timely appealed.

III.

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders v. California*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the procedural background and potential issue of whether the court erred in denying defendant relief under section 1172.6, and requesting this court to conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his supplemental brief, defendant argues (1) the trial court prejudicially erred when it denied his section 1172.6 petition; (2) the court erred by engaging in factfinding; (3) he made a prima facie showing for relief under section 1172.6 as the record of conviction shows he was prosecuted under an imputed malice theory and thus the court should have issued an order to show cause; (4) his due process rights were denied when the prosecutor charged him with gang enhancement allegations to impute malice; (5) the prosecutor misstated the law concerning gang allegations to impute malice during closing argument; (6) the court erred in admitting expert gang testimony; and (7) his appellate attorney was ineffective.

Preliminarily, we note that our Supreme Court recently held the procedures set out in *Wende* do not apply to an appeal from a denial of relief under section 1172.6. (*People*

6

*v. Delgadillo* (2022) 14 Cal.5th 216, 222 (*Delgadillo*).) However, "[w]hen appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter. [Citations.] [¶] If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Id*. at pp. 231-232.) Nonetheless, "the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Id*. at p. 232.)

The appellate review procedures employed here conform to those required under *Delgadillo*. Defendant was served with counsel's brief indicating no arguable issues were identified for appeal, this court issued a letter inviting defendant to file his own personal letter or brief and he did so.[4] In addition to considering the issues raised in

---

[4] This court's notice to defendant did not inform him the appeal could be dismissed if he did not file a personal brief. However, since defendant filed his own personal brief, which we now evaluate and address on its merits, the lack of notice of potential dismissal had no effect on the disposition of the appeal and caused no harm to defendant.

defendant's personal brief, we have conducted an independent review of the record. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

A. *Legal Background*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 846-847; see Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature accomplished this by amending sections 188 and 189.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a

8

major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (Stats. 2018, ch. 1015, § 3.)

Effective January 1, 2022, Senate Bill No. 775 expanded eligibility for relief to include individuals convicted of "attempted murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2; Legis. Counsel's Dig., Sen. Bill No. 775 (2021-2022 Reg. Sess.).) But it did not expand eligibility for relief pursuant to section 1172.6 to one who is the actual person who commits murder or attempted murder.

Senate Bill No. 1437 also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief if they could no longer be convicted of murder under the new law. (§ 1172.6, subd. (a); *People v. Gentile*, *supra*, 10 Cal.5th at p. 843; *People v. Lewis* (2021) 11 Cal.5th 952, 959; *People v. Strong* (2022) 13 Cal.5th 698, 708.) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citations], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019' . . . ." (*People v. Strong*, *supra*, at p. 708, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record

9

in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid*.)

In *People v. Lewis*, *supra*, 11 Cal.5th 952, our Supreme Court explained that petitioners who request counsel "are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . ." (*Id*. at p. 957.) "[O]nly *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'" (*Ibid*.) "'"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Id*. at p. 971.) Importantly, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972.) "Senate Bill [No.] 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life . . . .'" (*People v. Strong*, *supra*, 13 Cal.5th 698 at p. 710.)

C. *Analysis*

Here, defendant's record of conviction shows that he was the actual person who attempted to kill the victim. Defendant admitted that he shot the victim because he

10

believed the victim had a gun. Moreover, as the prosecutor informed the trial court at the August 12, 2022 prima facie hearing, there were no instructions given to defendant's jury regarding aiding and abetting, the natural and probable consequences doctrine, or the felony murder rule.

In addition, there is no indication in the record to support defendant's claim that the trial court improperly engaged in factfinding. And even if the trial court impermissibly engaged in factfinding, the asserted error was harmless since defendant was the sole perpetrator who attempted to kill the victim. (*People v. Lewis*, *supra*, 11 Cal.5th 952 at p. 973 ["when an 'error is purely one of state law, the *Watson* harmless error test applies'" and the defendant must show it is reasonably probable he would have obtained a more favorable result absent the error].) Defendant was not an aider and abettor or major participant; he was the direct perpetrator of the crime. (See *Delgadillo*, *supra*, 14 Cal.5th at p. 233 [no entitlement to relief under section 1172.6 where the petitioner was the actual killer and only participant in the killing arising from a traffic accident and prosecuted as second degree murder under an actual implied malice theory and as gross vehicular manslaughter while intoxicated].) Thus, even if the trial court had considered the whole record, it would have come to the same conclusion.

As to defendant's contentions relating to his underlying trial, those claims are not properly before us. Because defendant appealed from a denial of his petition for resentencing pursuant to section 1170.95, he could only raise issues related to the denial of the petition. Defendant's underlying case is long final. Thus, defendant's arguments

11

related to the trial, i.e., admission of expert gang testimony, charging defendant with gang participation, and prosecutor's closing argument, are improper.

We also reject defendant's claim that his appellate counsel was ineffective. A claim of ineffective assistance of appellate counsel requires a showing of both deficient performance and prejudice. (*In re Reno* (2012) 55 Cal.4th 428, 488.) Appellate counsel has the duty to prepare a legal brief containing citations to the appellate record and appropriate authority. Counsel must set forth all arguable issues and cannot argue the case against his or her client. Failure of "appellate counsel to raise crucial assignments of error, which arguably might have resulted in a reversal" deprives an appellant of effective assistance of appellate counsel. (*In re Smith* (1970) 3 Cal.3d 192, 202-203.) However, the fact that appellate counsel followed the procedure set forth in *Wende* is insufficient, by itself, to show appellate counsel has been ineffective. Defendant has made no claim that counsel's conduct either fell below professional standards or prejudiced him in any way.

In sum, defendant was the sole perpetrator of the killing. He was not prosecuted under the natural and probable consequences doctrine or under the felony murder rule, nor was the jury instructed on either of these theories. Defendant is therefore ineligible for relief under section 1172.6 as a matter of law. (See § 1172.6, subd. (a) ["A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable

12

consequences doctrine, or manslaughter may file a petition with the court" to have the conviction vacated].)  The trial court did not err in denying defendant's request for relief under section 1172.6.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.